UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SHERI LAYNE DRODDY,**

        **Plaintiff,**

v.                                                     **Case No: 6:22-cv-2071-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## ORDER

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying an application for disability insurance benefits and supplemental security income. In a decision dated March 4, 2022, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from July 7, 2020, the alleged onset date, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)). R. 28-29.

Having considered the parties' briefing and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

    **I.**    **Issues on Appeal**

Claimant raises one issue on appeal:

Whether the ALJ failed to consider the episodic nature of bipolar disorder and the fluctuation of symptoms over time when evaluating Plaintiff's testimony, evaluating medical opinions, determining residual functional capacity, and formulating the hypothetical to the vocational expert.

Doc. 21 at 13.

## II.  Standard of Review

As the Eleventh Circuit has stated:

In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[1] The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

---

[1] Here, in assessing the Claimant's RFC, the ALJ stated:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with limitations: The claimant can perform simple routine, competitive, low-stress, repetitive tasks on a sustained basis over a normal eight-hour workday, in a stable work environment, with no more than simple decision-making required; occasional close interpersonal interactions with coworkers;

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March 22, 2017,[2] 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. The revised regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ will assess the persuasiveness of a medical source's opinion in light of five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[3] 4) specialization and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency constitute the most important factors in determining persuasiveness, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the

---

occasional interaction with supervisors and with the public; and is unable to perform complex and detailed tasks or to meet fast-paced high production demands. The claimant should only occasionally be subject to changes in the workplace or learn new tasks.

R. 20.

[2] Claimant filed the applications for Disability Insurance Benefits and Supplemental Security Income on October 7, 2020. R, 15,

[3] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

relationship between a medical source's opinion and other evidence within the record.[4] In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

### III.   Discussion

While presented as one issue, Claimant appears to have raised—or at least identified—three issues that require separate discussion. That said, Claimant's arguments on these three issues are either intertwined or raised substantively for the first time in reply. The Court has endeavored to identify and address each of Claimant's arguments. In sum, the Court will address: (A) arguments concerning the ALJ's alleged failure to consider the episodic nature of bipolar disorder; (B) arguments addressed to the ALJ's consideration of Claimant's subjective testimony; and (C)

---

[4] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

arguments that appear to challenge the ALJ's consideration of the medical opinions of Drs. Mathew, Ribot, and Hamrick. As discussed, the Court finds that the ALJ did not err, and the ALJ's decision—to the extent it is challenged—is supported by substantial evidence.

### A. Episodic Nature of Bipolar Disorder

Claimant contends that the ALJ failed to consider the episodic nature of her bipolar disorder in the decision. Doc. 21. The Court disagrees. The ALJ found that Claimant has the following severe impairments: bipolar disorder, manic with psychotic features; an anxiety disorder; and a post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)). R. 18. Claimant states that she testified that she is in either a manic state and her house is clean, or she is depressed and she cannot get out of bed, she does not shower, and the house is dirty. Doc. 21 at 14. Claimant contends that Dr. Mathew's opinion supports her testimony. *Id*. Claimant explains that "Dr. Mathew described Plaintiff's impairments as follows: '[Plaintiff] has persistent depressive symptoms, anxiety, mood instability, paranoid symptoms, poor coping skills, and difficulty leaving the house all of which impair her functioning and ability to fulfill daily responsibilities' (Tr. 491)." *Id*.

The ALJ found that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are "not entirely consistent with the medical evidence and other evidence." R. 22. Claimant argues that the ALJ erred in making this finding because the ALJ did not consider the episodic nature of bipolar disorder. *Id*. at 15 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002 (finding that if an "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so") (citing *Hale v. Bowen*, 831 F.2d 1007, 1001 (11th Cir. 1987)). Claimant asserts that the ALJ must give specific reasons for the finding on

credibility and a claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to find disability. *Id*.

Claimant adds that the ALJ relied on Dr. Olin Hamrick's opinion as a basis for discrediting Claimant's testimony even though Dr. Hamrick "admitt[ed], at one point, that '[Claimant] has some good and bad days or better days and worse days' (Tr. 52)." *Id*. at 16. Claimant also argues that the ALJ mistakenly found that Dr. Zahydie Ribot's report supports Dr. Hamrick's opinion and that the ALJ failed to consider Claimant's fluctuating symptoms when evaluating Dr. Ribot's opinion. *Id*. at 17-18. Likewise, Claimant contends that the ALJ reviewed Dr. Sajida Mathew's records and mistakenly found that they were consistent with Dr. Hamrick's opinion and that the ALJ should have considered the impact of Claimant's fluctuating symptoms over a sustained period. *Id*. at 18-19. Claimant argues that the ALJ's rationale was insufficient when the ALJ noted normal findings on the day of the exam and concluded a visit was not consistent with disabling symptoms. *Id*. (citing *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. 2021)).

Where a claimant is diagnosed with bipolar disorder, the Eleventh Circuit has noted that "the ALJ must consider the episodic nature of bipolar disorder." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267-68 (11th Cir. 2019) ("We agree with our sister Circuits that people with chronic diseases can experience good and bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work."); *see also Simon*, 7 F.4th 1094 at (11th Cir. 2021) ("[W]hen evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace.").

As an initial matter, Claimant points out that the Commissioner may argue that the new regulations which eliminate the treating physician rule supersede cases like *Schink* and *Simon*. Doc. 21 at 22.[5] Claimant is correct that there is a question regarding the applicability of that authority. Namely, in *Vergara v. Comm'r of Soc. Sec.*, the Eleventh Circuit stated in a footnote that the claimant's reliance on *Simon* and *Schink* is misplaced because those cases predated the revised regulations and, unlike *Schink*, the ALJ found that the claimant's bipolar disorder constituted a severe impairment. 2023 WL 5814433, at *4 n.1 (11th Cir. Sept. 3, 2023).

While *Vergara* is not binding and the Court has found limited reliance on the footnote,[6] the Court agrees with the Commissioner that the ALJ did appropriately consider the episodic nature of Claimant's disorder, even assuming the cases still have application as Claimant argues.

The ALJ considered Claimant's impairments and found that Claimant's bipolar disorder is severe. R. 18. With respect to the RFC, the ALJ discussed at length Claimant's hearing testimony regarding daily activities and experiences, substance use, work, and medication side effects. R. 21-22. As stated *supra*, the ALJ found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 22. The ALJ also states that "[t]he opinion of Dr. Olin Hamrick is the basis for [this] finding. *Id.* Specifically, the ALJ provides:

> The opinion of Dr. Olin Hamrick is the basis for the above finding. Dr. Hamrick is a psychologist who testified at the claimant's February 2022 hearing in the capacity

---

[5] It seems the Commissioner does not necessarily dispute that *Simon* and *Schink* still apply. *See* Doc. 24 at 6.

[6] *See Slaughter v. Kijakazi*, 2024 WL 110677, at *12 (S.D. Ga. Jan. 10, 2024).

> as a medical expert. He is the only mental health professional to have access to and review of all medical evidence currently in the record. He testified the claimant's diagnosis of a bipolar disorder, manic with psychotic features, an anxiety disorder, and post-traumatic stress disorder (PTSD) are documented in the treating source records in file and are reiterated by the psychological consultative exam in file (Exhibit 7F). Dr. Hamrick had access to and review of all medical evidence of record and he testified based on his review of such evidence, he finds the claimant has no more than moderate limitation mentally. Dr. Hamrick provided functional limitations derived from the claimant's mental impairments as follows: she is capable of performing simple routine, competitive, low-stress, repetitive tasks on a sustained basis over a normal eight-hour workday, in a stable work environment, with no more than simple decision-making required;occasional close interpersonal interactions with coworkers; occasional interaction with supervisors and with the public; she is unable to perform complex and detailed tasks or to meet fast-paced high production demands; and she should only occasionally be subject to changes in the workplace or learn new tasks. The discussion of Dr. Hamrick's supporting testimony under finding number four above is incorporated herein by way of reference as support of his residual functional capacity opinion.

*Id.* At step four, the ALJ states:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. The medical expert having review of all medical evidence in the record, Dr. Olin Hamrick, a psychologist, testified the claimant does not have a mental impairment that satisfies the criteria of any listed impairment, including those under section 12.00. He testified the medical record is inconsistent with the claimant having greater than moderate limitations. He testified the objective medical evidence throughout the treating source records (Circles of Care) is inconsistent with remarkable mental status presentations. Specifically, the records are inconsistent with dilutions or abnormal perceptions reported, there is denial of suicidal and homicidal ideation, she is alert and oriented x 3, memory is intact, insight and judgment are fair, and she is motivated to treatment. Dr. Hamrick testified these details are repeated in Exhibits 2F, pages 12, 14, 18, 22, 24, and throughout that exhibit. He explained that typical note of subjective report located in Exhibit 2F, page 45, noted life stressors related to her roommate. The claimant is taking Hydroxyzine to help itching caused by anxiety, she reports "feeling calm", denies manic or psychotic symptoms, no anhedonia is reports, she has no feelings of hopelessness, she states feeling much better since having evicted her roommate and that she seeks out resources through churches. Dr. Hamrick testified that Exhibit 6F, covering 2021, is similar the evidence in Exhibit 2F. Dr. Hamrick testified he does not find objective evidence in the record supporting greater than moderate limitations. The medical evidence of record is discussed in detail elsewhere below in this decision and supports the opinions of Dr. Hamrick.

R. 19.

With respect to Dr. Hamrick's testimony regarding the moderate limitations the ALJ incorporates and cites to as the basis for the finding, Dr. Hamrick testified that:

> [Claimant's] able to communicate effectively but I would say moderate, just again, giving her some benefit of the doubt. I know she must have good days and bad days or better days or worse days. And the same thing for concentration, pace and persistence. There's nothing in the record to the contrary that she might at times have moderate limitations but nothing greater than that.

R. 52.

While the ALJ did not expressly use the phrases "good days" and "bad days" in the decision, the testimony he largely relies upon in making the RFC determination does specifically address the episodic nature of the impairment. And in consideration of that testimony, the ALJ examined the Vocational Expert. R. 51-58.

Further, the ALJ does not rely only on citations to "good days." Throughout the decision, the ALJ comprehensively considers Claimant's mental health symptoms. With respect to "bad days," the ALJ acknowledges Claimant's testimony that she can be super happy one day and then cannot get out of bed the next and other testimony regarding her daily living and Claimant's reported "situational stressors." R. 22, 24. The ALJ goes on to thoroughly compare Dr. Hamrick's opinion with Drs. Ribot and Mathew's records and opinions and other medical records related to Claimant's subjective reports. R. 23-26. The ALJ then concludes:

> Considering all of the above, including the repeated denial of symptoms when seen for care, the good objective findings on exams, the conservative course of care (medication only, visits months apart), and opinion of Dr. Olin Hamrick, the undersigned finds the claimant does not have symptoms of the frequency, duration, and/or severity to limit her greater than in the above finding.
>
> \*\*\*
>
> While the claimant alleges she is severely restricted by her impairments and their limiting effects, the objective medical evidence does not corroborate her allegations. It is clear that her impairments are likely to produce some of the functional limitations that she speaks of, but not to the extent that she is unable to satisfy the demands of regular work activity on a sustained basis. The reasonable

> limitations from the evidence of record and the claimant's testimony are accounted for in the residual functional capacity set out in the above finding.

R. 26.

The ALJ may not have found Claimant's testimony or subjective reports regarding her "bad days" to be entirely credible, but they were considered. Accordingly, the undersigned does not agree that the ALJ failed to consider the episodic nature of Claimant's bipolar disorder to the extent he needed to under the revised regulations.

### B. Subjective Testimony

Claimant's arguments overlap. And, in large part, Claimant's arguments concerning the ALJ's assessment of Claimant's subjective testimony relate directly to Claimant's arguments concerning the episodic nature of her bipolar disorder. But, to the extent Claimant raises a separate argument regarding the ALJ's treatment of her subjective complaints, the Court finds that she is not entitled to relief.

"When a disability claimant attempts to establish disability through testimony about subjective symptoms, he must provide evidence of a medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms; or (2) 'that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Carr v. Comm'r of Soc. Sec.*, 2024 WL 94149 (11th Cir. Jan. 9, 2024) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). "If the ALJ finds that a claimant's testimony about his symptoms lacks credibility, she must 'articulate explicit and adequate reasons for discrediting the claimant's' testimony, although she doesn't have to do that using 'particular phrases or formulations.'" *Id.*

Here, the ALJ more than adequately explained why Claimant's testimony was discredited to the extent that it was. The ALJ carefully discusses Claimant's testimony and then explains at

length why her statements are not *entirely* consistent with the medical evidence. Specifically, the ALJ discusses Drs. Hamrick, Mathew, and Ribot's opinions and records along with Dr. Hamrick's testimony at the hearing. R. 22-26. The ALJ addressed Claimant's reports at doctors' visits and the physicians' exams of Claimant. *Id*. In contrast to Claimant's subjective complaints, the ALJ found after discussion and citation to the record that Claimant repeatedly denied symptoms, the objective findings on exam were good, the course of care was conservative, and the medical opinions and record did not corroborate her allegations. R. 26.

Despite Claimant's apparent argument to the contrary, the ALJ's discussion of Claimant's subjective testimony and reports was not limited to the boilerplate credibility language found in some disability decisions. Here, the ALJ considered Claimant's testimony, provided "explicit and adequate reasons" for discounting it, and those reasons are supported by substantial evidence. Claimant discusses at length the ALJ's treatment of Drs. Ribot and Mathew's opinions and compares their records or opinion in relation to the ALJ's decision. *See* Doc. 21 at 17-21. The ALJ sufficiently addressed Claimant's subjective testimony and complaints even as it related to the episodic nature of her disorder as discussed *supra*. To the extent Claimant is asking the Court to reweigh the evidence, it is not the province of the Court to do so. *See Winschel*, 631 F.3d at 1178.

Claimant adds in the Reply that her daily activities do not disqualify her from a disability finding. Doc. 25 at 8 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985)). Indeed, it is well established that "[p]articipation in everyday activities of short duration does not disqualify a claimant from disability where other evidence supports a finding of disability." *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005 (11th Cir. 2016) (citing *Lewis*, 125 F.3d at 1441).

But Claimant's daily living or activities were only part of the ALJ's overall analysis of Claimant's testimony, and Claimant cites to no authority that the ALJ cannot consider daily activities in evaluating Claimant's subjective testimony. "[T]he ALJ may consider daily activities among all other record evidence when making a residual functional capacity finding." *Shear v. Comm'r of Soc. Sec.*, 2023 WL 5200487, at *5 (M.D. Fla. Aug. 14, 2023) (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)). As discussed, the ALJ provided several reasons for finding Claimant's subjective complaints less than fully persuasive, including the medical evidence of record. The relevant inquiry "is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Accordingly, Claimant's argument is rejected.

C. **The Medical Opinions of Drs. Mathew, Ribot, and Hamrick**

Again, Claimant's arguments tend to overlap and are centered on the episodic nature of her impairment. Yet Claimant also states briefly that the new regulations require the ALJ to explain how the ALJ considered the supportability and consistency factors. Doc. 21 at 24. In doing so, Claimant asserts that the ALJ failed to consider the supportability of Dr. Mathew and Dr. Ribot's opinions and the consistency of Dr. Hamrick's opinion. *Id*.

As an initial matter, to the extent Claimant is attempting to separately argue entitlement to relief because the ALJ failed to properly consider the persuasiveness of the medical opinions at issue, that argument is deemed waived. Claimant's statement is conclusory in nature and lacks an adequate analysis for review. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, at 777 n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a

perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). That said, in the Reply, Claimant provides additional argument that the ALJ failed to fully consider the supportability and consistency of the opinions. *See* Doc. 25. But "[i]ssues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances." *Raper v. Comm'r of Soc. Sec.*, 89 F. 4th 1261, 1274 (11th Cir. 2024) (quoting *Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023)). So, the Court questions whether a claimant can resuscitate an abandoned argument in a reply brief.

But even assuming Claimant did not waive this argument, or saved it in reply, Claimant's argument lacks merit.

1. *Dr. Hamrick*

With respect to Dr. Hamrick's opinion, Claimant states that the ALJ failed to consider the consistency factor. Doc. 21 at 24. Claimant adds in the Reply that even though the ALJ noted that Dr. Hamrick had access to review all of the record and had the opportunity to question Claimant, "this fact does not excuse the ALJ from his legal duty under the new regulations to fully consider [] the supportability and consistency of Dr. Hamrick's opinion." Doc. 25 at 2 (citations omitted).

Consistency under the revised regulations relates to the relationship between a medical source's opinion and the other evidence within the record. Here, the ALJ conducted a comprehensive review of Dr. Hamrick's opinion in relationship to Claimant's testimony, the other physicians' opinions, and the record in general. According to the ALJ,

> The testimony of medical expert Olin Hamrick, Jr., PhD, that the claimant's mental disorders cause moderate, but not marked or extreme, difficulties mentally and finding the claimant has the limitations set out in the above finding are persuasive. . . . Dr. Hamrick's rationale includes specific references to medical evidence in the record, is consistent with the evidence of record, and is convincing.

R. 26. *Id*. The ALJ does not stop with a generic statement regarding consistency. Instead, the ALJ discussed Dr. Hamrick's opinion in relation to Drs. Jill Rowan, Ribot, and Mathews' opinions, addressing how other medical evidence supports Dr. Hamrick's findings. *See* R. 18, 22-23, 25-26. To the extent Claimant has even properly raised this issue, the Court finds the ALJ's explanation adequate.

### 2. *Drs. Mathew and Ribot*

With respect to Claimant's statement regarding the supportability factor and the opinions of Drs. Mathew and Ribot, the Court also finds that the ALJ adequately evaluated those opinions.

Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion. Claimant argues that the ALJ failed to consider both physicians' objective clinical findings and their explanations. In the Reply, Claimant states that, "[c]onfusingly, the ALJ found Dr. Mathew's opinion least persuasive despite the ongoing treating relationship that dates back to October of 2014[]" and "[t]o find Dr. Mathew's opinion the least persuasive, despite having the most knowledge and personal experience with Plaintiff, just doesn't make sense." Doc. 25 at 5-6.

The Court finds that the ALJ properly considered the supportability factor here. Namely, the ALJ discussed at length the persuasiveness of Dr. Mathew's opinion, addressing the physician's objective exam with citation to the record. R. 24-25. The ALJ also discusses elsewhere in the decision Dr. Mathew's records of Claimant's exams and appointments. R. 23. As to Dr. Ribot, the ALJ considered the physician's records and clinical findings and directly discussed the inadequacy of Dr. Ribot's own record with citation to the record. R. 26 (citing Ex. 7F). Further, the ALJ discussed Dr. Ribot's reports earlier in the decision regarding Claimant's exams. *See* R. 23, 25.

## IV. Conclusion

Whether Claimant's arguments are read separately or in conjunction with one another, the Court finds that substantial evidence supports the ALJ's decision. The ALJ properly considered Claimant's mental impairments including the episodic nature of Claimant's bipolar disorder to the extent the law still requires the ALJ to do so under the revised regulations. The ALJ also properly evaluated Claimant's subjective testimony and the persuasiveness of the physicians' opinions at issue. The Court otherwise rejects any of Claimant's requests for the Court to reweigh the evidence. *See Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on February 7, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties